[21 NYS3d 63]

In the Matter of RONALD J. MELTZER (Admitted as RONALD MELTZER), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 3, 2015

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.
*Patrick J. Brackley*, for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Ronald J. Meltzer was admitted to the practice of law in the State of New York by the First Judicial Department on March 26, 1990, under the name Ronald Meltzer. At all times relevant herein, respondent maintained a registered address within the First Department.

The Departmental Disciplinary Committee moves, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.11, for an order accepting respondent's affidavit of resignation from the practice of law and striking his name from the roll of attorneys. Respondent's affidavit of resignation, sworn to September 4, 2015, complies with section 603.11 in that he states that, inter alia: (1) he has consulted with and is represented by counsel of his choice; (2) his resignation is submitted freely, voluntarily and without coercion or duress; and (3) that he is fully aware of the implications of submitting his resignation (*see* 22 NYCRR 603.11 [a] [1]).

Respondent states further that he is aware that he is the subject of a disciplinary investigation into allegations that, inter alia: in preparing his client, and his client's friend, for the client's criminal trial involving charges of driving while intoxicated, he suborned the perjury/false trial testimony of the friend by instructing him to "downplay" the number of times he met with respondent to prepare for trial in the event that he was asked such a question on cross-examination (22 NYCRR 603.11 [a] [2]).

Respondent states that his instruction to his client's friend was given about six to eight months before the actual trial; and, on June 21, 2012, at the trial, the friend testified that he and respondent met a total of three times to discuss his testimony. In fact, they met a total of five to six times. Further, the friend testified that he did not meet with respondent the

night before his trial testimony when, in fact, he did.* Respondent admits that he did nothing to correct the friend's false testimony, though he knew it was false at the time.

Respondent states that the reason he instructed the friend to "downplay" the number of times that they met was so that it did not appear to the jury that they had rehearsed the "perfect story." Respondent avers that he always believed his client had a valid defense in that his friend was present on the night of his arrest, and that they both went to the two venues they testified about. His client was arrested, while legally parked with the engine running, in the vicinity of one of the venues. Respondent states further that he always believed that this was a valid defense "at least up until many months after the trial when I learned that [they] had given false testimony about [the friend] being present on the night of the incident."

In addition, respondent states that he is aware that he is the subject of allegations that during the trial he knowingly made a false statement to the trial judge and the prosecutor when at a sidebar conference he falsely stated to the court that there was no written material that he was obligated to turn over to the prosecution pursuant to *People v Rosario* (124 AD2d 683 [2d Dept 1986], *lv denied* 69 NY2d 833 [1987]). In fact, respondent knew that such material existed in the form of a memorandum that he had prepared based on his conversations with his client and the friend, but he concealed its existence from the court and the prosecutor so that the prosecution could not use the document for purposes of cross-examination/impeachment (*see* 22 NYCRR 603.11 [a] [2]).

Respondent acknowledges that if disciplinary charges were brought against him predicated on these allegations, he could not successfully defend himself on the merits against such charges (*see* 22 NYCRR 603.11 [a] [3]).

In addition, respondent states "[t]o my knowledge, there are no other complaints of professional misconduct pending against me in this or any other jurisdiction, and I greatly regret my actions in this matter."

Respondent's affidavit of resignation fully complies with 22 NYCRR 603.11 and, therefore, should be accepted by this Court

---

\* Respondent further states that on cross-examination, Nunez testified that he and respondent met once about two weeks before trial; and that on redirect examination he "rehabilat[ed] [the friend] to some extent by asking him questions and having him testify that we also met a couple of times over the winter."

(*see e.g. Matter of Weintraub,* 123 AD3d 135 [1st Dept 2014]; *Matter of Teplen,* 120 AD3d 139 [1st Dept 2014]; *Matter of Riley,* 115 AD3d 112 [1st Dept 2014]).

Accordingly, the Committee's motion should be granted and respondent's affidavit of resignation from the practice of law accepted, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective nunc pro tunc to September 4, 2015.

TOM, J.P., ANDRIAS, MOSKOWITZ, RICHTER and KAPNICK, JJ., concur.

Respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York, nunc pro tunc to September 4, 2015.